IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 06 CR 919 |
| ) | |
| DERRICK SHAREEF, ) | Honorable David H. Coar |
| ) | Judge Presiding |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

Defendant, DERRICK SHAREEF, has pled guilty to a violation of 18 U.S.C. 2332a(a)(2)(D), attempted use of weapons of mass destruction. Defendant has acknowledged responsibility for his conduct, accepted the consequences of his present and future incarceration and is preparing for his eventual return to society having learned some painful lessons. Defendant has spent many long days and hours attempting to understand how he has arrived at this juncture in his life – and where he hopes the road of his remaining years will lead.

**Defendant's Background**

The Defendant's early years were disruptive. Defendant was reared by his mother, who had been married three times and never married Defendant's father. As a child, Defendant moved frequently and attended numerous schools. As a result, Defendant never developed the normal childhood friendships. As Defendant navigated the normal obstacles of adolescence, there was always something missing in his life – he was without a compass. The role model and father figure who would point to the right path, the person who would instruct, encourage and support, was not present. Derrick did not realize during his formative years what was missing – only that there was a

void in his life.

In September 2006, Defendant met a man who provided what was always been missing – a person who provided a comfortable home, warm meals, a true friend, and most importantly, a spiritual brother who understood Defendant's anger and frustration. The profound relief, the love and affection that developed from this relationship was a bond unlike anything Defendant had ever experienced.

Defendant had no way of knowing that this giant role model was a wolf in sheep's clothing. The individual who purported to be his friend was in fact a Government informant, an individual whose true motivation was to exploit the relationship and lead Defendant astray in order for the informant to minimize his own predicament and to receive monetary benefits from the Government. Derrick had no chance to recognize the true motives of the informant – Derrick was naïve and immature and infatuated with all that was provided. Derrick was unaware of the criminal background of his new friend. Derrick was unaware that his friend had been convicted of both armed robbery (1991) and possession of a stolen vehicle (1997). Derrick did not know that the informant was a former member of the Four Corner Hustler street gang and that he had been both a drug dealer and a supervisor of gang members selling drugs. Derrick did not know that this "father figure" was actually in arrears in excess of $16,000.00 for child support for two of his children. Derrick was unaware that during the course of the friendship the informant was being paid by the Government and had received in excess of $16,000.00 for services rendered in connection with Derrick.

**Defendant's Introduction To His New Best Friend**

In the fall of 2006, while Derrick was employed as a clerk in a Rockford game store, the

informant appeared and introduced himself. At the time, Derrick was earning $8.50 an hour and struggling to meet his expenses. His car had broken down and he did not have the funds to make the repairs. The introduction to the informant was the day prior to Ramadan. This was very significant to Derrick since Ramadan represented a period where brothers should reach out and help each other. It seemed to Derrick like an act of divine intervention since the informant immediately offered him a place to stay rent free, where he would have his own room and meals would be provided at no cost. When Derrick indicated that he had transportation difficulties, the informant volunteered that Derrick could have one of his two cars for his own use free of charge. Derrick again felt that he had been truly blessed.

During the time that Derrick resided with the informant, there would be frequent discussions about Islam and the persecution of Muslims. Derrick had been introduced to Islam at age 15 and immediately embraced his conversion to his new faith. Derrick began dressing as a Muslim wearing a long robe and/or a turban or kufi (skull cap). Derrick was frequently subjected to condescending looks and comments as a result of his appearance. In the years immediately preceding the offense, and especially after 9/11, Derrick was frequently subjected to discrimination. These episodes became more frequent when Derrick decided to reside with his mother in Genoa, Illinois. Derrick's mother had discouraged him from residing with her as she was very much aware of the racial intolerance in that all white community. The intolerance that Derrick experienced deepened his religious zeal and further escalated his alienation from what he perceived to be a harsh and unjust world.

The foregoing is not a justification for Derrick's offense, but hopefully provides an explanation as to how a young man with no criminal history of violence (other than rhetoric)

consummated a transaction with an informant and Government agent in the parking lot of the Cherry Vale Mall in Rockford, Illinois.

Young people make mistakes growing up – some more serious than others. Defendant's mistake was severe, but he had professional assistance from beginning to end, a persuasive and clever mentor who paved the way under the guise of love and brotherhood while concealing his true intentions and sinister motivation.

### **The Plan**

Shortly after Derrick had settled in to his new home, discussions began with the informant which frequently centered on the injustices directed at the Muslim community. These discussions culminated in a plan to bring attention to the situation through an act that would bring attention to the problem. The Defendant's sincere beliefs as a Muslim were elevated by the informant to a level approaching fanaticism. The informant exploited Defendant's religion, his anger and frustration from years of discrimination. The informant capitalized on his role as the father figure Derrick never had. Derrick trusted and admired the informant for his apparent sincere beliefs as a Muslim.

Once Derrick had settled into his new home, the informant initiated discussions regarding numerous methods which would bring attention to the injustices of Muslim life. In the weeks immediately preceding the arrest, the conversations were more frequent and intense. On several occasions, Derrick raised doubts about going through with the plan. The informant's response on these occasions was to threaten Derrick. On numerous occasions in the final two weeks prior to the arrest, the informant became furious and indicated to Derrick that many others had "bailed out on him" and the he would not let Derrick do the same. The informant daily challenged Derrick's commitment as a Muslim.

As the plan evolved, obstacles began to appear. The informant suggested that explosive devices should be purchased for use in the upcoming event. Derrick had no idea how or where to purchase explosive devices, nor did he have the financial ability to make such a purchase. This was not a problem. The informant could make the necessary arrangements. The informant suggested that they purchase grenades, but Derrick had no money to make such a purchase. Derrick's only asset was a pair of stereo speakers that he had purchased in Arizona for $100. The informant suggested that Derrick exchange his stereo speakers in order to purchase the explosive devices (grenades).

## The Guidelines

The presentence report calculates the Defendant's Guideline range at life imprisonment based on an offense level 43. Additionally, Defendant does not have a criminal background and would, therefore, be a criminal history I. However, pursuant to Guideline 3A1.4(b), Defendant's criminal history is increased to a category VI because the matter involved a federal crime of terrorism.

This is a case where the sentencing factors of 3553(a) trump the Guidelines and the Court's discretion to impose a reasonable sentence outside the Guidelines is unfettered. United States v. Demaree, 459 F.3d 791, 795 (7th Cir. 2006). The Defendant's lack of criminal history or absence of violent activities of any kind render a Guideline sentence to be shockingly disproportionate to the underlying conduct, and grossly excessive when considering the directives of §3553.

The Seventh Circuit has acknowledged that in certain cases sentences well below the applicable Guideline are appropriate. United States v. Carter, 2008 WL 3844058 (7th Cir. Aug. 2008)(approving a sentence of 24 months from a Guideline range of 87 to 108 months). United

States v. Parr, 2008 WL 4279480 (7th Cir. Sept. 2008)(commenting without deciding that a violation of 18 U.S.C. 2332(a)(3) resulting in a 10 year sentence with a Guideline range of 360 months to life might be reasonable but would require a strong justification citing Gall v. United States, 128 S.Ct. 586, 597 (2007).

Defendant submits that considering all the circumstances of this case, the lack of any criminal history provide a strong justification for a non-Guideline sentence.

### The Punishment

Derrick has accepted his role and the mistakes he has made. He does not blame the informant but does recognize the manipulation that occurred under the guise of love and religion.

Derrick is an intelligent and respectful individual who understands his future requires accepting and dealing with his punishment. He is already planning for his future. Derrick realizes that the true tenets of his religion are founded upon brotherhood and non-violence. Presently, Derrick reads the Koran and prays on a daily basis. He has been elected as the Imam at the MCC and leads the weekly religious services on the occasions that a guest celebrant is not available. Derrick also instructs his fellow inmates on the principles of his religion. Derrick aspires to be an Islamic scholar and upon his release continue in that role.

The harsh reality is that prison life will not be conducive to Defendant's goals. Derrick will be surrounded by incorrigibles and sociopaths who will attempt to derail his positive intentions and exploit his youth. His prior experiences will hopefully caution him to be guarded.

Notwithstanding Derrick's best efforts to better himself, years in prison will take their toll. At some point the law of diminishing returns will result in the negative influences of prison life muting the Defendant's positive aspirations.

At this point, Defendant's life is salvageable. He has an opportunity for greatness having achieved some wisdom through his mistakes. He is committed to learn and improve and hopes the Court will impose a punishment that will enable him to do so.

Respectfully submitted,

/s/ Donald V. Young
DONALD V. YOUNG

DONALD V. YOUNG
Attorney for DERRICK SHAREEF
20 North Clark Street, Suite 1725
Chicago, Illinois 60602
(312) 332-4034