IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 CR 919 |
| ) | |
| DERRICK SHAREEF, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Derrick Shareef has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Shareef is currently serving a thirty-five-year prison sentence imposed after he pled guilty to a charge under 18 U.S.C. § 2332a(a)(2)(D) for attempted use of a weapon of mass destruction. His projected release date is in November 2036. Mr. Shareef asserts three grounds in support of his motion: his young age and underdeveloped brain at the time of the offense, his rehabilitation efforts in prison over the last fifteen years, and a government agent's role in influencing his commission of the offense.

### Background

Mr. Shareef's offense involved a planned attack on the CherryVale Mall in Rockford, Illinois. Mr. Shareef devised the plan along with a man who, unbeknownst to him, was working as an undercover informant for law enforcement. The plan involved using hand grenades at the mall, including planting them in garbage cans there. Mr.

Shareef agreed to trade stereo speakers for what he believed were hand grenades and a handgun. These were supplied by a supposed contact of the informant who, unbeknownst to Mr. Shareef, was an undercover law enforcement agent. An exchange was set up involving non-functional grenades; Mr. Shareef turned over the speakers to the undercover agent; viewed the weapons; and then carried a box containing the weapons to the informant's car, where he was arrested.

The events that led to Mr. Shareef's guilty plea began in September 2006, when the undercover informant, who was working with the Federal Bureau of Investigation, approached Mr. Shareef and introduced himself. At the time, Mr. Shareef was a twenty-one-year-old Muslim man working as an employee of a game store in Rockford, Illinois. He lived alone and was struggling to meet his expenses. During his initial conversation with Mr. Shareef at the game store, the informant offered to house him rent free and provide him with food and shelter. Mr. Shareef says that the meeting's auspicious timing during the month of Ramadan led him to view this offer as an act of "divine intervention" during an otherwise tumultuous time in his life. He immediately agreed and moved in with the informant's family the next day.

The government and Mr. Shareef have different takes on the course of events that followed involving Mr. Shareef and the informant. According to the government, at various points during his interactions with the informant, Mr. Shareef told the informant that he wanted to commit attacks of violence in the United States and made comments about attacking different buildings, including federal courthouses, stating that "I just want to smoke a judge." The government states that Mr. Shareef made similar comments on other occasions, including when he responded to the informant's

2

questions about when he wanted to plan the attack by stating, "I like the Holiday season." The government also references a later statement by Mr. Shareef that "You gotta do stuff, hell we ain't gotta hit nobody, just blow the place up . . . . I'm thinking stuff like courthouses, city hall, government places, government facilities." At some point, when the informant and Mr. Shareef went to the CherryVale mall in Rockford to plan the attack, Mr. Shareef stated: "I think, ah, if we do, do something like this, we gotta do, we gotta do it simultaneously, like you would have to hit one spot and I'll do another one." Later, the government says, Mr. Shareef proposed placing grenades in garbage cans at the mall, indicating that the garbage would be shrapnel. Mr. Shareef and the informant went to the mall at least twice to "case" it and plan the attack. A few days before the offense, the informant and Mr. Shareef videotaped each other making statements explaining why they were undertaking what Mr. Shareef called their "mission." The government says that the informant saw Mr. Shareef as a real threat.

Mr. Shareef says that as a result of his difficult upbringing and personal experiences, he developed a son-to-father-like relationship with the informant in which he sought to impress the informant and follow his instructions. Mr. Shareef's upbringing was disruptive, involving moves to different states and frequently attending new schools. His mother married three times, and Mr. Shareef lacked a relationship with his natural father.

Once he moved in with the informant, Mr. Shareef says, the informant frequently initiated conversations with him about Islam and injustices against Muslims around the world. Gradually, these conversations shifted to discussion about taking action and bringing attention to these issues. Mr. Shareef claims that the informant exploited his

"anger and frustration from years of discrimination" based on his Muslim faith.  Def.'s Sent'g Mem. at 1.  As time went on, these conversations became more intense and frequent.  When Mr. Shareef expressed doubts about the informant's approach and ideas, he says, the informant would threaten him.  In particular, Mr. Shareef says that the informant once said he would kill Mr. Shareef if he did not follow through with the plan—a statement the government has admitted the informant made.  Mr. Shareef further recounts the informant harassing and scrutinizing him daily, stating that "[o]n numerous occasions in the final two weeks prior to the arrest, the informant became furious and indicated to Derrick that many others had 'bailed out on him' and that he would not let Derrick do the same.  The informant daily challenged Shereef's commitment as a Muslim." *Id*. at 4.  At sentencing, Mr. Shareef's mother described him as a "yes man" who "never had an original thought of his own." *Id*. at 14.

     Mr. Shareef states that it was the informant who suggested that they should purchase explosive devices and grenades to use in the mall plot.  Mr. Shareef says he had no financial ability to make the purchase.  The informant allegedly knew that Mr. Shareef had a pair of stereo speakers that were worth $100 and suggested that he sell the speakers in exchange for grenades.

     On December 6, 2006, Mr. Shareef and a fake weapons supplier met in a parking lot on Walton Road in Rockford to exchange Mr. Shareef's stereo speakers for four hand grenades and a nine-millimeter handgun.  Once Mr. Shareef handed over the speakers, the fake supplier showed him a locked box in the trunk of his car that contained four hand grenades, a nine-millimeter handgun, and several rounds of ammunition.  The grenades and ammunition were non-functioning, but Mr. Shareef did

4

not know that. Mr. Shareef asked about the deployment of the weapons and then placed the box into the informant's car. At this point, law enforcement officers arrested Mr. Shareef.

On December 8, 2006, Mr. Shareef was charged with attempting to use a weapon of mass destruction against persons and property within the United States, in violation of 18 U.S.C. § 2332a(a)(2)(D), and attempting to maliciously damage and destroy, by means of fire and an explosive, a building and real personal property used in interstate commerce, in violation of 18 U.S.C. § 844(i). On November 28, 2007, Mr. Shareef entered a plea of guilty to the charge of attempting to use a weapon of mass destruction.

During his sentencing hearing, Mr. Shareef gave an allocution in which he denounced his "extreme ideology" that had been "lying dormant within me" but said that "[i]t didn't dictate my life. It didn't dictate my actions and it didn't dictate my speech. It was just something that was there because of a misunderstanding." Sent'g Tr. at 16, 20, 23. He stated that the informant "called me to conduct this offense that I'm being charged with," that "he had such a sway over me to where I accepted from him based upon him being seen in my eyes as someone who had knowledge," and "he facilitated [me] to these things and encouraged it." *Id.* at 22-24. Mr. Shareef admitted that "it [was] true that I did have intentions to conduct this offense" but stated that his "intentions were never to completely annihilate and destroy and hurt people." *Id.* at 22-23. Towards the end of his statement, Mr. Shareef explained that "I no longer feel this way, and this is due to seeking and acquiring knowledge by the mercy of the Lord. I

5

have the complete understanding that this methodology and this ideology that I had is deviant." *Id.* at 23.

On September 30, 2008, Judge David H. Coar sentenced Mr. Shareef to a prison term of 420 months (thirty-five years), along with a $5,000 fine and five years of supervised release. The Seventh Circuit affirmed the sentence on appeal.

On December 10, 2010, Mr. Shareef filed a motion under 28 U.S.C. § 2255 to vacate the judgment. He contended that his trial counsel had rendered ineffective assistance by failing to pursue defenses of entrapment and sentencing entrapment. On December 11, 2011, this Court denied Mr. Shareef's motion.

Mr. Shareef filed the present motion for compassionate release on November 25, 2021. At the time, he had been incarcerated for fifteen years; at this point it has been about eighteen and one-half years. His motion includes supporting material from a wide range of prison staff and members at FCI Greenville, including a psychologist, a chaplain, a re-entry affairs coordinator, an education administrator and staff member, a cook supervisor, a former inmate, teachers, as well as a staff member at FCI Milan. These statements discuss Mr. Shareef's involvement and success in a variety of prison programming, including his successful engagement with psychology services and programs, his time working in the Suicide Watch Companion program, his involvement with chapel services, completion of college courses, participation in reentry programs, and employment in the prison kitchen. These materials describe Mr. Shareef, among other praiseworthy characteristics, as the "ideal inmate showing his need to help others, respects staff, and always ready and eager to participate in programs that are beneficial to his needs." Def.'s Ex. D (letter from FCI Greenville Re-entry Affairs Coordinator).

Most recently, in April 2024, a former corrections officer who had served in that role for twenty-one years stated that, despite interacting with thousands of inmates during his time, Mr. Shareef's case was the first time he had written a letter of support to a court.

Mr. Shareef's motion was effectively fully briefed as of August 2022, when his counsel filed a revised proposed release plan. The Court kept the motion under advisement because the Sentencing Commission had under consideration Sentencing Guidelines amendments that arguably could have benefitted Mr. Shareef. No such amendments materialized, however, so the Court proceeds to rule on the motion.

## Discussion

The undersigned judge was not the sentencing judge in this case and does not know if it would have imposed a sentence as severe as the one Mr. Shareef got. But that is not the issue here; section 3582(c)(1)(A) is not a true "second look" statute. Rather, it permits a court to reduce a sentence only if it finds "extraordinary and compelling reasons" warranting a reduction and further finds a reduction to be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021); *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).[1]

In deciding whether a prisoner has shown "extraordinary and compelling" reasons, a court considers the proffered reasons both "individually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). A ground that is independently insufficient may be enough as part of "a combination of factors " to

---

[1] A movant under section 3583(c)(1) must first exhaust administrative remedies provided by the Bureau of Prisons. The government does not dispute that Mr. Shareef has done this.

7

establish extraordinary and compelling circumstances.  *Id.*

Mr. Shareef argues three grounds in support of his motion.   First, he points to "15 years of extraordinary, and extraordinarily fruitful, rehabilitative efforts [that] serve to invalidate the principal rationale underlying his 420-month sentence, namely, that this sentence was necessary to protect the public."  Def.'s Mem. in Support of Mot. Compassionate Release at 19.  Second, he references "the incomplete development of [his] brain at the age of 22," at the time of the offense.  *Id.*  Third, he describes the informant's "extraordinary role in bringing about the commission of this 'attempt' offense."  Def.'s Supp. Mem. in Support of Mot. for Compassionate Release at 5.  Mr. Shareef contends that these three grounds, taken together, provide an appropriate basis for a sentence reduction.

Starting with rehabilitation, Mr. Shareef presents ten statements from a diverse range of prison officials and staff who speak to his commendable growth and positive development during his time in prison.  They are impressive.  The authors of the statements refer to Mr. Shareef as, for example, a "positive role model for the young men in class" a "successful, productive, and rehabilitative man," and a "genuine person . . . [who] continues to mature and progress."  Def.'s Exs. G, C.  Based on these and the other supplementary materials submitted by the defense, the Court has little doubt that Mr. Shareef has been rehabilitated in a significant way.

But under controlling law—including a statute enacted by Congress— rehabilitation by itself cannot suffice as an "extraordinary and compelling" reason permitting early release.  *See United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022); 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered

8

an extraordinary and compelling reason").  That said, rehabilitation may be considered in combination with other factors in assessing whether there are extraordinary and compelling reasons allowing a sentence reduction.  *See, e.g., Vaughn*, 62 F.4th at 1072-73; *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022); *see also* U.S.S.G. §1B1.13(d).

Acknowledging this point, Mr. Shareef argues that his case does present other circumstances, beyond his rehabilitation, that permit this Court to grant compassionate release:  his underdeveloped brain at the time of the offense, and what he refers to as the informant's "indispensable" role in the offense.  Def.'s Supp. Mem. for Compassionate Release at 6.

The problem with Mr. Shareef's argument is that his youth and the role of the informant were mitigating factors argued by his counsel at the sentencing hearing back in 2008—indeed these points were arguably the centerpiece of defense counsel's argument in mitigation.  And these grounds as argued by counsel were undeniably taken into account by the sentencing judge.  There is some indication in Seventh Circuit case law that points considered in the original sentencing are not an appropriate basis for a later sentence reduction under section 3582(c)(1)(A).  *See United States v. Wrice*, No. 21-1947, 2021 WL 7209619, at *1 (7th Cir. Dec. 20, 2021); *United States v. Rimpson*, No. 20-3467, 2021 WL 6098440, at *1 (7th Cir. Sept. 22, 2021).  Though the Court would not go so far as to say that a point that was before the sentencing judge can *never* be considered as, or as part of, extraordinary and compelling reasons permitting a sentence reduction, the Court is not persuaded that a finding of extraordinary and compelling reasons is appropriate in a situation where the Court is

9

essentially being asked to weigh differently the same factors addressed at the original sentencing.

And that is essentially the situation presented here. Mr. Shareef's age and the role of the informant were factors emphasized by the defense in writing and orally at Mr. Shareef's sentencing hearing. Counsel's written sentencing memorandum emphasized Mr. Shareef's youth and the influence of the informant. Def.'s Sent'g Mem. at 1-4. And during the hearing, counsel highlighted the informant's role in the offense, stating that "[n]ow, in that situation Derrick already has some pretty crazy ideas floating around in his head, and the informant in my view completely manipulated and exploited those to set out a pattern of conduct that eventually culminated in his arrest" and that "[h]e was exploiting their relationship to bring [Mr. Shareef] along to the point where he was arrested." Sent'g Tr. at 13–15. The sentencing judge effectively rejected this point as a basis for imposing a lesser sentence: when explaining his sentence, the judge referenced the role of the informant, stating that "[s]o I don't understand that the sentence should be tempered by the fortuity that the government intervened." *Id.* at 26.

Regarding Mr. Shareef's age, it is true that his trial lawyer did not make the specific point argued by counsel now—that the incomplete development of Mr. Shareef's brain at the age of twenty-one or twenty-two was part of what led to his commission of the offense. But this does not mean that the point was left by the wayside. Far from it. Counsel's sentencing memorandum began with a discussion of Mr. Shareef's youth, lack of guidance, being "without a compass," having "a void in his life," and as "naïve and immature." Def.'s Sent'g Mem. at 1-2. And there is no question that the sentencing judge picked up on this. The judge effectively began the sentencing

10

by describing the defendant's mitigation argument as follows: "The defendant through the sentencing memorandum portrays an impressionable young man who fell under the sway of an informant . . .," Sent'g Tr. at 3, a characterization with which defense counsel immediately agreed. *Id.*

Mr. Shareef's current counsel advances arguments regarding his client's immaturity and undeveloped brain in a significantly more detailed and effective way than trial counsel did during the sentencing hearing back in 2008. But as indicated earlier, the Court finds no support in the law for the proposition that a compassionate release motion may be sustained on the proposition that the sentencing judge did not give sufficient weight to certain factors or that counsel did not argue them in the best way.

Finally, if the Court considers together all three of the grounds asserted by Mr. Shareef—his rehabilitation, his age and state of brain development at the time of the offense, and the role of the informant—the result is no different. Each of those grounds by itself falls short as the Court has discussed, and this is not a situation in which the whole is greater than the sum of the parts. Granting Mr. Shareef's motion would be tantamount to saying that he is entitled to a second look at the key grounds considered and rejected at the time of the original sentencing based on a factor that, under the statute, cannot suffice by itself, namely his post-sentencing rehabilitation. The Court is unaware of caselaw that takes the compassionate release statute this far.

The Court commends Mr. Shareef for his steady and diligent efforts at rehabilitation. This will serve him and the community very well when he is released. But the Court concludes that Mr. Shareef is not entitled to a reduced sentence under the compassionate release statute.

**Conclusion**

For these reasons, the Court denies Mr. Shareef's motion for compassionate release [dkt. no. 125].

Date: May 19, 2025

_____
MATTHEW F. KENNELLY
United States District Judge